## M. Barmann & Sons v. Dice

*John McCrea, III,* for plaintiff.
*Robert L. Fredericks,* for defendants.
*C. Walter Whetmoyer, Jr., Robert J. Yocum* and *Robert L. Black,* for junior lienholders.

SHUGHART, *P. J.*, March 5, 1976—On June 18, 1975, an execution sale of petitioners' property was conducted to satisfy a judgment held by M. Barmann & Sons (hereinafter referred to as "respondent"), a partnership located in Middletown, N. Y. Petitioners moved to have the sale set aside, and a rule to show cause why this should not be done was granted against respondent and other lien creditors of petitioners. Following an answer by respondent, J K & B, Inc., the purchaser at the execution sale, and the First National Bank of Shippensburg, depositions were taken on November 21, 1975.

Petitioners have presented several arguments primarily contending that respondent, by claiming an amount due on the judgment greatly in excess of the amount actually owed by petitioners, abused the execution process. Considering the totality of the circumstances of this case, we are satisfied that, on this ground alone, petitioners are entitled to the relief herein sought and, therefore, we will not proceed to consider the other arguments advanced on their behalf.

On June 6, 1970, petitioners signed a note promising to pay to respondent the sum of $27,035 within 90 days. Pursuant to a confession of judgment provision in the note, judgment was confessed on June 19, 1970, in the face amount of the note. The execution was upon this judgment.

Following entry of judgment, as the result of several transactions not disputed by the parties, petitioners' debt was substantially reduced. Respondent admits that as of April 1971, the judgment was reduced from $27,035 to a balance of $14,163.39. On June 2, 1971, respondent informed petitioners by letter that the balance on the ac-

count was $14,331.48. The record does not disclose any further communication between the parties until April 1973.

Respondent testified that an inquiry as to the amount due was received from the petitioner-husband in April 1973. Respondent replied that the matter had been turned over to an attorney and directed petitioners to contact him regarding the amount due. This posture of nondisclosure has been maintained by respondent since that date.

On May 16, 1975, petitioners were served with a writ of execution issued pursuant to a praecipe filed by respondent's attorney on May 5, 1975. Both the praecipe and the writ recite $27,035 as the amount due. Respondent admitted, however, that as of the date of the deposition, November 21, 1975, the balance due on petitioners' account was only $18,590.85, an amount almost $8,500 less than what was claimed under the writ.

The petitioner-husband testified that until the sheriff's sale, he and his attorney offered to pay the sheriff's costs as well as any other costs necessary to obtain an accurate figure for settlement. To whom these offers were made is not clear. It is evident, however, that two days prior to the execution sale the petitioner-husband and respondent's attorney were in contact. The attorney told petitioner that $24,000 was the amount owed, which was $3,000 less than the amount set forth in the writ.[1] The evidence also shows that the petitioner-husband traveled to respondent's office in New York several days before the sale and of-

---

1. In this context, we also note that a writ of execution issued in this matter on February 4, 1975, which was returned stayed, claimed $23,139 as the amount due plus interest to be added from January 1, 1975.

fered a partial payment of $2,000. This offer was rejected.

Following the sale, the sheriff submitted a proposed schedule of distribution of the proceeds. An examination of this schedule reveals that respondent was to receive $27,233.31, which is equal to the amount claimed under the writ in addition to attorney's costs of $198.31.

One additional fact must be mentioned. Until the date of the sale, respondent had been computing a service charge of one percent per month on petitioner's account. Respondent concedes that this was error and that six percent was the maximum rate which could be charged. It is upon a recomputation at this rate that respondent has based the claim of $18,590.85, and respondent admits that prior to the sale it had never provided petitioners with a statement computed at the six percent rate.

Pa. R.C.P. 3132 grants broad discretionary power to this court to set aside a sheriff's sale upon proper cause shown: Fidelity Bank v. Pierson, 437 Pa. 541, 264 A.2d 682 (1970). Where the conduct of the judgment creditor amounts to fraud or oppression, a sale may be set aside: see, e.g., Augustine v. Augustine, 291 Pa. 15, 139 Atl. 585 (1927). While we are not prepared to categorize respondent's conduct here as fraudulent, there is little doubt that it acted oppressively and unfairly toward petitioners.

The mere fact that the writ claimed as due an amount excessively greater than that actually due is, without more, an insufficient reason to set aside a sale under that writ: Coleman v. Mansfield, 1 Miles 56 (Dist. Ct. of Phila., 1835). In this case, however, additional important factors must be

considered. Petitioners did not receive a statement which reflected a correct interest rate. Of course, since respondent agreed at the execution sale that six percent was the proper rate, petitioners would have then received notice of the modification. That, unfortunately, would have been of little solace, for the damage had already been done. While the error may not have been a conscious one, it was severely prejudicial to petitioners. Furthermore, it is apparent from the proposed schedule of distribution that, after the sale, respondent continued to claim the same amount as it had claimed before the sale. This is substantial evidence of a bad faith effort to collect more than that to which it was justly entitled.

While respondent may have been acting well within its rights when it refused to accept the partial payment tendered by petitioner, we do not believe it was justified in flatly refusing to provide him with information as to the amount due on his account. This case clearly demonstrates the reason for this conclusion. After all, it is the creditor who maintains the debtor's account. He is the one most familiar with the records and the accounting procedures which he employs. A creditor should not be allowed to insulate himself from the activities of his collecting attorney, since such silence can provide only an opportunity for errors. Had the creditor been more communicative toward the debtors in this case, the excessive amount claimed in the writ might have been quickly remedied by proper inquiry and response among the three principals involved. Since petitioner took the time to journey to respondent's office shortly before the sale respondent, certainly, would have suffered no appreciable inconvenience or expense in providing a statement at that time.

The failure of respondent to provide a statement was compounded by the actions of its attorney. On February 3, 1975, the praecipe he filed claimed $23,139.58 as the amount due. Three months later, the present praecipe was filed; it claimed $27,035 as the amount due. One month later, the attorney advised petitioner that $24,000 was owed. After the sale, respondent was scheduled to receive $27,035, plus attorney's costs. The inference most favorable to respondent which we are able to draw from this conduct is that the attorney was not sure what amount was due. An execution in ignorance of the amount due is inappropriate to say the least. If, on the other hand, the attorney knew $24,000 was due, then it is difficult to justify the claim of $27,035 in the praecipe. The potential for abuse is manifest. By claiming an excessive amount in the writ and then proposing to the debtor a lesser settlement figure, with the implied threat that failure to settle will result in execution for the larger amount, the creditor would enjoy a formidable bargaining position. We cannot sanction such conduct.

The actions of respondent in this case have resulted in substantial harm to petitioners. Their property has been sold at an execution sale at a price which the petitioner-husband asserts is considerably less than its real value, and, certainly, it cannot be denied that the circumstance of a sheriff's sale, lacking the attributes of an arm's length transaction, often produces a less than satisfactory price. More importantly, however, we have petitioner's testimony concerning his efforts to sell the property just before the sale. He stated that he wanted to secure a price which would enable him to pay all his creditors. His estimated outstanding obligations approached $59,000. This

estimate would have included approximately $14,000 owed to respondent.[2] According to the writ, however, respondent demanded an additional $13,000. The $70,000 offer which petitioner testified to, therefore, would not have been sufficient to satisfy all demands. Respondent's excessive demand and its refusal to disclose the actual amount due directly interfered with petitioners' efforts to arrange a sale in satisfaction of all their debts.

## ORDER OF COURT

And now, March 5, 1976, the rule to show cause why the sheriff's sale should not be set aside is made absolute and the said sale be, and is hereby, set aside, costs to be paid by plaintiff.

---

2. Petitioner does admit he owed respondent some amount. Because of the statement of June 1971, he must have known the amount owed was at least $14,000. If he did not include the $14,000 in his estimate of obligations, his argument would be pointless, because the $70,000 offer would not have been sufficient to satisfy the amount *known* to be due to respondent.